# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

LUCSON RENARDO DESTINE,

    Defendant.

**Civil Action No. 13-0982 (CKK)**
**Criminal No. 08-126-01 (CKK)**

## MEMORANDUM OPINION
(January 28, 2014)

Defendant Lucson Renardo Destine pled guilty to one count of Hostage Taking and Aiding and Abetting, in violation of 18 U.S.C. §§ 1203(a) and 2, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Presently before the Court is Defendant's *pro se* [49] Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, as well as the Government's [52] Motion to Dismiss Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. Defendant claims ineffective assistance of counsel in violation of his Sixth Amendment Rights, as he alleges various errors by his counsel of record including the failure to file a requested notice of appeal. The Court, however, does not address the merits of Defendant's claim because, upon consideration of the pleadings[1], the relevant legal authorities, and the record as a whole, the Court finds Defendant's motion is time-barred. Accordingly, Defendant's [49] Motion to Vacate, Set Aside, or Correct a Sentence is DENIED, and the Government's [52] Motion to Dismiss Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 is GRANTED.

---

[1] Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, ECF No. [49] ("Def.'s Mot."); United States' Motion to Dismiss Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, ECF No. [52] ("Gov't's MTD"); Defendant's Objection to Government's Response, ECF No. [54] ("Def.'s Obj.").

On April 29, 2008, Defendant, along with his co-defendants, was charged by indictment with one count of Conspiracy to Commit Hostage Taking, in violation of 18 U.S.C. § 1203(a), and one count of Hostage Taking and Aiding and Abetting, in violation of 18 U.S.C. § 1203(a) and 2. *See* Indictment, ECF No. [1]. On February 26, 2009, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), Defendant entered a written guilty plea to one count of Hostage Taking and Aiding and Abetting, in violation of 18 U.S.C. § 1203(a) and 2. *See* Plea Agreement, ECF No. [15]. Under the plea agreement, the parties agreed that the appropriate sentence should be 168 months, and on May 15, 2009, the Court sentenced Defendant to 168 months incarceration, with credit for time served, followed by three (3) years of supervised release, and a Special Assessment of $100. *See* Judgment, ECF No. [36]. Defendant did not appeal from his conviction and sentence. Over four years later, on June 16, 2013, Defendant filed the present *pro se* [49] Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. Defendant argues that he received ineffective assistance of counsel in violation of his Sixth Amendment rights, as his counsel of record "[1] failed to file[] any timely objections to the Pre[s]entence Report, (2) [f]ailed to argue to the Court the application of USSG § 5K2.11 [l]esser harms downward departure, where the record will demonstrate that defendant['s] life was in danger by his co-conspirators, (3) [f]ailed to argue to the Court that defendant's life is in danger upon return to his country, (4) [f]ailed to file a requested Notice of Appeal to have the Sentence review[ed] for an unreasonable sentence, (5) [f]ailed to preserve or perfect the record for [a]ppellent [sic] [r]eview."[2] Def.'s Mot. at 4. Upon receiving Defendant's motion, the Court ordered the Government to submit a response. Order (July 2, 2013), ECF No. [50]. In response,

---

[2] Defendant lists these objections as the first ground for his motion. He then reiterates the second and fourth objections as additional grounds for his motion. Def.'s Mot. at 5, 7.

the Government filed its [52] Motion to Dismiss Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. Defendant subsequently filed his [54] Objections to the Government's motion.

Under Title 28, Section 2255 of the United States Code:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). "A 1–year period of limitation shall apply to a motion under this section."

*Id*. § 2255(f). This one-year limitation period runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* Accordingly, motions pursuant to § 2255 must be filed within one year of the date on which the judgment of conviction becomes final, or the movant must show that some other date of accrual is proper under § 2255(f)(2)-(4).

Here, Defendant's conviction and sentence became final on May 31, 2009 when he did not appeal from the May 15, 2009 sentencing hearing and May 21, 2009 entry of the judgment order. Pursuant to the version of Fed. R. App. Proc. 4(b) in effect in May 2009, Defendant was

required to file his notice of appeal within 10 days after the entry of the judgment against him. *See* Fed. R. App. Proc. 4(b) (2005 ed.). Although he contends that the failure to file a notice of appeal was due to the ineffective assistance of counsel, the fact remains that Defendant did not file a notice of appeal, and his conviction became final on May 31, 2009. Furthermore, Defendant does not allege that some other date of accrual pursuant to §2255(f)(2)-(4) is appropriate here. No illegal governmental action has prevented Defendant from filing his motion, nor does his motion rely on a newly recognized retroactively applicable right.

Further, Defendant does not allege that the facts underlying his motion could not have been discovered through the exercise of due diligence prior to May 31, 2009. Indeed the record reveals that the operative facts for Defendant's claim – his counsel of record's failure to raise certain challenges and appeal his sentence – were available and in fact disclosed to him in the presence of an interpreter at the time his conviction became final. *See* Transcript of Sentencing, 5/15/09 at 2:11-13 (noting swearing of interpreter for Sentencing); Transcript of Plea Hearing, 2/26/09 at 2:11-12 (noting swearing of interpreter for Plea Hearing).

First, although Defendant claims that his attorney "failed to file[] any timely objections to the Pre[s]entence Report", the record shows that Defendant's attorney did in fact consult with him *before filing a set of objections to the Presentence Report*. *See* Receipt and Acknowledgement of Presentence Investigation Report, ECF No. [35] at 2 ("Mr. Destine and I have reviewed the Presentence Report (PSR) in relation to his case, and we have found that the following factual/material inaccuracies exist in the PSR."). Accordingly, Defendant was on notice of which objections his attorney was (and was not making). Further – after providing Defendant with an interpreter – the Court stated in open court at the time of sentencing that all objections had been resolved, a statement that Defendant had an opportunity to respond to and

rebut.  *See* Transcript of Sentencing, at 2:23-3:2 ("What I have is a presentence report . . . There are no objections that have not been resolved.").

Next, regarding Defendant's contention that his attorney "[f]ailed to argue to the Court the application of USSG § 5K2.11 [l]esser harms downward departure", at the plea colloquy, Defendant was informed by the Court, again in open court with the benefit of an interpreter, that pursuant to Defendant's Rule 11(c)(1)(C) plea, he and the Government had reached an agreement for a fixed sentence of 168 months, making a downward departure from the Sentencing Guidelines by the Court irrelevant.  *See* Transcript of Plea Hearing at 37:11-16 ("Now, as I've indicated, the agreement that you and the Government have reached is that the sentence would be 168 months, that's roughly 14 years . . . If I do approve it then that would the sentence that you would get."); *id.* at 39:1-4 (Defendant answering "Yes" to the Court's question, "Or you could decide not to withdraw the plea and go forward and be sentenced the way a normal defendant would be sentenced.  Do you understand that?").  Indeed, Defendant's Plea Agreement, which was interpreted to him, states that by agreeing to a specific sentence, he would not be seeking a downward departure.  *See* Plea Agreement, ECF No. [15] at 4 ("The parties agree that under the Sentencing Guidelines neither a downward nor an upward departure from the applicable Guidelines range is warranted.  Accordingly, neither party will seek such a departure."); Transcript of Plea Hearing at 35:24-36:1 (Defendant replying "Yes" to the Court's question, "Okay.  So then the full plea letter was interpreted to him?").  The Court explained in detail and on the record to Defendant how the Sentencing Guidelines would be applicable only if the plea agreement were rejected or withdrawn.  The Guideline range for Defendant was 210 to 262 months, and his sentence of 168 months was below this guideline range.  *Id.* at 39:14-22 ("Let me discuss the sentencing guidelines or -- this would only come up if I don't accept the

168 months. So, if I don't accept the 168 months, this is the way the Court would go about deciding on an appropriate sentence. . . .You calculate the offense level, and there's somewhat of a calculation in here and I'll get to it, it's characteristics that relate to the offense."). Transcript of Sentencing at 3:20-24 ("So, the difference between the advisory sentencing guidelines, which would be 210 months to 262, which is 17.5 years to 21.8 years. The plea has 168 months, which is 14 years, which is less than the advisory sentencing guidelines."). If Defendant were to be sentenced pursuant to the advisory Sentencing Guidelines range, he would need to argue for a variance from the Sentencing Guidelines. Transcript of Plea Hearing at 41:9-12 ("The Court then could either sentence you within that. The Court could do what we call a variance, which could – the statute sets out certain things that I need to consider."). His Rule 11(c)(1)(C) plea, the Court explained, was an agreed-upon variance of the advisory Sentencing Guidelines. Transcript of Sentencing at 3:25-4:2 ("The Government has justified the Rule 11(c)(1)(C) sentence, that is below the advisory sentencing guidelines, I guess by 3 years and 5 months on the following grounds . . . ."). The Court further explained to Defendant that it did not see any potential downward departures as applying here, except for a possible departure based on Defendant's deportable status, placing Defendant on notice that his attorney was not arguing for a downward departure pursuant to USSG § 5K2.11. Transcript of Plea Hearing at 41:4-7 ("I don't think that, as far as we know, that there's any departures that actually would apply other than maybe the fact that he's getting -- you're getting deported. But there's nothing obvious at this point. . . ."). Defendant indicated that he understood the procedure under which he was being sentenced pursuant to his plea agreement. *Id.* at 41:19-42:2 (Defendant answering "Yes" to the Court's question, "So, I can either sentence you under the advisory sentencing guidelines. I can sentence you as a variance. Or I can do what has been proposed here, which is to agree to

the sentence that you and your lawyer and the Government have agreed to, and if I accept that sentence, that will be the sentence that you get. . . . Is this something you've talked about with your lawyer?"). Accordingly, Defendant's argument that his attorney failed to argue to the Court the application of USSG § 5K2.11 [l]esser harms downward departure is out of place here, given the existence of his Rule 11(c)(1)(C) plea agreement. Furthermore, even if this argument were appropriate, the Court advised Defendant that it did not view any downward departures as appropriate (beyond perhaps the fact that Defendant was a deportable alien), signaling to Defendant at the time of the plea colloquy that his attorney had failed to argue for the application of the lesser harms downward departure. Consequently, no later accrual date is appropriate.

Next, regarding Defendant's contention that his attorney failed to raise his fear of deportation, Defendant was apprised during his plea colloquy, again in open court with the benefit of an interpreter, of the fact that his conviction could result in his deportation or exclusion from the United States. Transcript of Plea Hearing at 11:1-7 (Defendant answering "Yes" to the Court's question, "Do you understand that the conviction for this offense, your being found guilty,, could result in your being deported from the United States back to Haiti, or denial of citizenship if you wanted to become a citizen of the United States under the United States immigration law . . . ."). Moreover, as noted, the Court stated that Defendant could potentially be eligible for a downward departure in his sentencing *because of his status as a deportable alien*. Transcript of Sentencing at 4:5-6 ("He would be eligible for a Smith departure of six months because he is a deportable alien."). In addition, Defendant's Plea Agreement, which again he stated was interpreted to him, makes clear that he would be subject "to detention, deportation and other sanctions at the direction of the U.S. Immigration and Customs Enforcement." Plea Agreement, ECF No. [15] at 3. Further, at his sentencing, the Court

explicitly addressed in open Court with the benefit of an interpreter the fact that Defendant was deportable. Transcript of Sentencing at 4:6 (noting that Defendant is a "deportable alien"); *id.* at 13:23-14:3 (raising the possibility of deportation). Thus, it was clear to Defendant at the time his conviction became final that he was not being provided asylum due to any alleged danger in returning to his country.

Finally, as part of both his plea colloquy and sentencing, Defendant was explicitly informed of his right to appeal and the applicable ten-day deadline for filing such an appeal.[3] *See* Transcript of Plea Hearing at 15:3-8 ("You can appeal your conviction if you believe your guilty plea was unlawful or involuntary, or there was some fundamental defect in the proceeding. . . . And you have a statutory right to appeal your sentence under certain circumstances. . . ."); Transcript of Sentencing at 14:9-11 ("You have a right to appeal the sentence imposed by the Court. You must file an appeal within 10 days after the court enters judgment."). Indeed, the Court explicitly informed Defendant that he could appeal without any cost to him, and that counsel would be appointed to represent him. *Id.* at 14:11-13 ("If you're unable to afford the costs of an appeal, you can ask the Court to appoint counsel to represent you at no cost to you."); Transcript of Plea Hearing at 15:11-14 (Defendant answering "Yes" to the Court's question, "And if you are unable to pay the costs of an appeal you can ask to pay without any costs to you. Do you understand that?").

---

[3] Defendant's remaining contention that his attorney "failed to preserve or perfect the record for [a]ppellent [r]eview" is somewhat puzzling. Def.'s Mot. at 4. The Court understands Defendant to mean "the record for 'appellate review'" but this does not render this unexplained claim any more comprehensible. For present purposes, Defendant fails to explain what inaccuracies in the record for appellate review exist, and how these inaccuracies could not have been discovered through the reasonable exercise of due diligence prior to May 31, 2009. In addition, the Court notes that records of Defendant's plea and the Court's proceedings are available.

Thus, the facts underlying Defendant's claim were not only discoverable by Defendant – they appear to have been *known* by Defendant at the time his conviction became final. Again, as noted, in all of these proceedings, Defendant was provided an interpreter. Now, more than four years later, Defendant argues that did not realize the legal significance of these decisions at the time. Def.'s Obj. at 1. But the D.C. Circuit has rejected this understanding of § 2254(f)(4), as it "would in effect write the statute of limitations out of AEDPA, rendering it a nullity." *United States v. Pollard*, 416 F.3d 48, 55 (D.C. Cir. 2005). Rather, "for the purposes of § 2255(4), '[t]ime begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance.'" *Id.* (quoting *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)). Accordingly, the Court concludes that May 31, 2009 – the date Defendant's conviction became final – is the start date for the one-year statute of limitations applicable to motions under § 2255. *See also Dodd v. United States*, 545 U.S. 353, 357 (2005) ("In most cases, the operative date from which the limitations period will be measured will be the one identified in [(f)(1)]: 'the date on which the judgment of conviction becomes final.'").

Given this accrual date, the Government argues that the statute of limitations for Defendant's motion expired exactly one year later, on May 31, 2010. Gov't's MTD at 5. Thus, because Defendant's motion was not filed until June 16, 2013, pursuant to the one-year statute of limitations, his motion is untimely. The Court agrees. The statute of limitations for this motion expired on May 31, 2010 and Defendant's motion is untimely. To be sure, the Supreme Court has held that the statute of limitations applicable to § 2255 motions is subject to equitable tolling. *See Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010). However, this equitable tolling is available only where a movant shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 2562

(quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Here, Defendant has not established that extraordinary circumstances prevented him from filing his motion within the limitations period or that he has been pursuing his rights diligently in the time since his conviction became final. Indeed, the only explanation Defendant offers for his delay is that he "was in the special housing unit, with no access to a law library to file a timely § 2255." Def.'s Obj. at 2. Defendant never explains why confinement in the special housing unit prevented his timely filing, nor does he set out the actual dates in which he was confined in the special housing unit. In fact, he does not even state whether this confinement even overlapped with the limitations period at issue. Furthermore, although Defendant points to his counsel's alleged disregard of his instructions to file an appeal, Def.'s Mot. at 12, he does not allege that his counsel's misbehavior or inaction prevented him from filing a motion pursuant to § 2255, the sort of attorney irresponsibility that could constitute "extraordinary circumstances" and result in equitable tolling. *See Holland,* 130 S.Ct at 2564-65. In addition, Defendant never explains how he was diligently pursuing his rights during this period of confinement in the special housing unit. Without much more information as to the circumstances and timing of Defendant's confinement, further explanation of the circumstances preventing him from filing his motion, and additional evidence that he was diligently pursuing his rights, the Court concludes that this is not a case where equitable tolling is applicable. And in the absence of equitable tolling of the applicable statute of limitations, Defendant's motion is plainly untimely.

For the foregoing reasons, the Court finds Defendant is not entitled to the requested relief. Defendant was required to file a motion to vacate pursuant to 28 U.S.C. § 2255 within one year of the date on which his conviction became final, but clearly failed to do so. Defendant attempts to invoke equitable tolling of the statute of limitations, but cannot establish the

extraordinary circumstances and diligent pursuit of his rights needed for such tolling. Furthermore, the Court concludes that a hearing in this matter is unnecessary because the record conclusively shows that Defendant's motion is time-barred. *See* 28 U.S.C. § 2255(b) (no hearing required where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"). Accordingly, Defendant's [49] Motion to Vacate, Set Aside, or Correct a Sentence is DENIED and the Government's [52] Motion to Dismiss Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 is GRANTED. An appropriate Order accompanies a Memorandum Opinion.

As an additional note, in this Opinion, the Court has relied on finalized portions of the unofficial transcripts of Defendant's Plea Hearing and Sentencing which have been prepared by the Court Reporter. For the parties' reference, the Court attaches the pages containing these finalized portions as an Appendix to this Opinion.

_____*/s/*_____

**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.

LUCSON RENARDO DESTINE,

   Defendant.

**Civil Action No. 13-0982 (CKK)**
**Criminal No. 08-126-01 (CKK)**

**APPENDIX TO THE COURT'S JANUARY 28, 2014 MEMORANDUM OPINION**

1              IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
2

3    UNITED STATES OF AMERICA,

4              Government,                     CR No.

5                                             Washington, DC
            vs.                               Date
6                                             Time
     XXX,
7
               Defendant.
8    _____

9

10                   TRANSCRIPT OF STATUS HEARING
            BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
11                  UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14   For the Government:        ESQUIRE

15

16                             Washington, DC  20530

17                             (202)

18   For the Defendant:        , ESQUIRE

19

20

21   Court Reporter:           Lisa M. Foradori, RPR, FCRR
                               Official Court Reporter
22                             U.S. Courthouse, Room 6706
                               333 Constitution Avenue, NW
23                             Washington, DC  20001
                               (202) 354-3269
24   Proceedings recorded by mechanical stenography; transcript
     produced by computer-aided transcription
25

P R O C E E D I N G S

THE COURT:  So, do we have the waiver.  Let's call the case.

COURTROOM DEPUTY:  Criminal case 08.  126.-one. The United States of America versus Luke Destine, Ms. Schmidt for the Government Mr. Miles for the TKPWEFT, the defendant is present in the courtroom.

THE COURT:  Is is Mr. Destine is that how you pronounce your name or something else.

THE DEFENDANT:  Destine.

THE COURT:  Okay.  All right.  We've already sworn in the interpreter.  Let's have counsel and Mr. Destine come up and let's proceed.  If you have -- you should have copies with you.  If we can swear him in.

(Defendant sworn by clerk).

THE COURT:  Mr. Destine, we're here to take a plea I'm going to be asking you some questions as part of the plea to make sure that you understand what you're doing and that you're entering this plea agreement voluntarily.  If you don't understand what I'm asking you or if it doesn't sound like what has been explained to you by your lawyer, please stop me and ask.  You can also talk to your lawyer at any time and seek his advice.

I'll TKPOE through this showily and carefully to make SHAUR that is exactly what you want to do -FPT you can't

U.S. citizen.  Do you understand that the conviction for this offense, your being found guilty, could result in your being deported from the United States back to Haiti, or denial of citizenship if you wanted to become a citizen of the United States under the United States immigration law; do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Have you taken any medication in the last 48 hours?

THE DEFENDANT:  Yes.

THE COURT:  What was the medication for?

THE DEFENDANT:  They run some test on me and they say that I have high PWHRAOUD pressure so I need to take medicine.

THE COURT:  Okay.  And Mr. Miles have you had any indication that he that that's any issue of the confidency in terms of what he's understanding what he's doing.

MR. MILES:  No, Your Honor.

THE COURT:  I take it that is since you have not gone to school that you don't read or write in your own language is that right.

THE DEFENDANT:  No.

THE COURT:  It is neat correct or you can or can you can't read or write.

THE DEFENDANT:  I don't know how to read and I

1    THE DEFENDANT:  Yes.

2    THE COURT:  You can appeal -- let me tell you what

3    you're not giving up.  You can appeal your conviction if you

4    believe your guilty plea was unlawful or involuntary, or there

5    was some fundamental defect in the proceeding.  The Court is

6    required to ask certain questions and make certain findings.

7    And you have a statutory right to appeal your sentence under

8    certain circumstances, if it's contrary to the law or illegal.

9    Do you understand that?

10    THE DEFENDANT:  Yes.

11    THE COURT:  And if you are unable to pay the costs

12    of an appeal, you can ask to pay without any costs to you.

13    Do you understand that?

14    THE DEFENDANT:  Yes.

15    THE COURT:  Do you understand if you plead guilty

16    in this case and I accept your guilty plea you'll give up the

17    rights I've just gone over with you explained and there

18    wouldn't be any trial or any appeal except on the issues that

19    I said you could appeal.  Do you understand that.

20    THE DEFENDANT:  Yes.

21    THE COURT:  Do you want to plead guilty H this case

22    give up your rights to atrial and your right to an appeal and

23    all of the rights I've just discussed.

24    THE DEFENDANT:  I'm guilty.

25    THE COURT:  Now what I'm what is going to happen

1              MR. MILES:  Very well.

2              THE COURT:  There is a written letter in my

3    understanding Mr. Destine is that you don't read so how can

4    you explain to me how you wind over the letter the plea letter

5    that you've agreed to.  Did somebody read it to you, did they

6    interpreter read it to you how did this happen?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Well did you tell me be more

9    descriptive, I mean, did the lawyer read it and the

10   interpreter then interpret it did the interpreter have the

11   letter in front of you for him and interpret the letter for

12   you.  I mean how did you find out what is in the letter?

13             THE DEFENDANT:  My lawyer and my interpreter.

14             THE COURT:  Okay maybe Mr. Miles to move this along

15   you can tell me how you did this.

16             MR. MILES:  I had a copy of the plea agreement in

17   front of me and the interpreter had a copy of the plea

18   agreement and actually at first I summarized the critical

19   component of the plea agreement and the interpreter with me

20   present read the entire plea agreement and interpreted it to

21   him and after each paragraph I further explained the paragraph

22   through the interpreter and I was there to answer any

23   questions.

24             THE COURT:  Okay.  So then the full plea letter was

25   interpreted to him?

1           THE DEFENDANT:  Yes.

2           THE COURT:  Okay.  So, let me go over the letter.

3    If I don't explain it the way you understand it just let me

4    know I'm going to summarize it and if you have a different

5    understanding or you discussed it differently with your lawyer

6    just let me know because I want to make sure that I'm

7    explaining it and that we're both agreeing as too what is in

8    the letter okay.  So if I ask go through it in a different way

9    let me know.  Because I'm going to be asking you whether this

10   is your understanding as I've ex—PHAEUPBD it and when you're

11   agreeing to this.  Okay.

12          THE DEFENDANT:  Yes.

13          THE COURT:  So let me start with you've indicated

14   as I told you you would be entering the plea to Count 2.  And

15   it sets out in the plea letter what the statutory maximum is

16   and the statutory maximum is life sentence of fine of the

17   $50,000 or both.  A maximum of five years supervised release.

18   A special assessment of a hundred dollars which I cannot

19   decide that you don't have to pay you can pay it over time.

20   Restitution if it's appropriate to the victim, in other words,

21   if there are some K*US costs that would be viewed as

22   restitution then the Court is required to it's TPHAPBD tore I

23   is required to order it.  Is that your understanding of what

24   the statutory penalties are.

25          THE DEFENDANT:  Yes.

1          THE COURT:  And in terms of supervised release what

2     supervised release means is that if you're given the jail time

3     say for instance the 168 months, the Court can set a period of

4     supervised release in the community, things like you have to

5     work you have to report things like that.  And if its revoked

6     based on new criminal conduct or based on you're not following

7     the conditions, then the Court imposes a new sentence and you

8     wouldn't get credit for the time that you've already been in

9     jail do you understand that.

10          THE DEFENDANT:  Yes.

11          THE COURT:  Now, as I've indicated, the agreement

12    that you and the Government have reached is that the sentence

13    would be 168 months, that's roughly 14 years.  And you also

14    would not be required to pay any kind of fine, and the Court

15    would have to approve it.  If I do approve it, then that would

16    be the sentence that would you get.  If -- what's not covered

17    in this agreement is whether or not there's any restitution

18    and what it might be and any kind of specific terms of

19    supervised release.  Is that your understanding?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Now, you will get credit from

22    September 17.  Zero eight when you came into the custody of

23    the Americans towards your sentence so in other words, the

24    period you have been looked up since September 17 to the date

25    of sentencing will be counted towards your sentence so if it's

1           Or you could decide not to withdraw the plea and go

2   forward and be sentenced the way a normal defendant would be

3   sentenced.  Do you understand that?

4           THE DEFENDANT:  Yes.

5           THE COURT:  Now let me one aspect of this case also

6   is that as I told you it's wired which means that I've already

7   accepted conditionally Mr. Theard's plea, if I accept yours

8   then I have to also except and have it go through with Mr.

9   Succes because all three of you actually have to plead in and

10  the Court has to accept it for all three do you understand

11  that.

12          THE DEFENDANT:  Yes.

13          THE COURT:  Okay.  Some of this I've already

14  discussed.  Let me discuss the sentencing guidelines or --

15  this would only come up if I don't accept the 168 months.

16  So, if I don't accept the 168 months, this is the way the

17  Court would go about deciding on an appropriate sentence.

18          I could consider the sentencing guidelines, they're

19  advisory, not mandatory.  So, I wouldn't have to follow them,

20  but I do need to calculate them.  You calculate the offense

21  level, and there's somewhat of a calculation in here and I'll

22  get to it, it's characteristics that relate to the offense.

23  It involves the kinds of -- like a gun was involved, so it's

24  extra points.  It's all points.

25          If you accept responsibility for your actions, it's

1  together may not have considered and so I could give you a

2  higher sentence under this scheme, or I could do a lesser

3  sentence.

4          I don't think that, as far as we know, that there's

5  any departures that actually would apply other than maybe the

6  fact that he's getting -- you're getting deported.  But

7  there's nothing obvious at this point -- and it would be at

8  the sentencing.

9          The Court then could either sentence you within

10  that.  The Court could do what we call a variance, which

11  could -- the statute sets out certain things that I need to

12  consider.  I need to consider the offense, who you are, your

13  background, things that relate to, you know, how much of a

14  danger you are to the community, how much rehabilitation you

15  may need, whether other people need to be deterred from

16  committing these kinds of crimes, whether you need to be

17  deterred.  Those kinds of things in coming up with a fair and

18  just sentence.

19          So, I can either sentence you under the advisory

20  sentencing guidelines.  I can sentence you as a variance.  Or

21  I can do what has been proposed here, which is to agree to the

22  sentence that you and your lawyer and the Goverment have

23  agreed to, and if I accept that sentence, that will be the

24  sentence that you get.

25          Does this make sense up to this point?  Is this

1    something you've talked about with your lawyer?

2            THE DEFENDANT:  Yes.

3            THE COURT:  So that gets EUS through the guideline

4    departures.  Now you and the TKPWOFR have set out what this

5    calculation that comes to 40 minute us three there may be

6    other considerations and the probation office writes the

7    presentence report and they do a calculation and they may see

8    some different things that have not been thought of as part of

9    this.  So in the calculation may come back being different

10   this will only make a difference from your perspective in term

11   of if I don't accept the 168 months you don't withdraw the

12   plea and I'm go ahead and TPHEFG you do you understand that.

13           THE COURT:  You look a little puzzled if you don't

14   speak up.

15           THE DEFENDANT:  Yes.

16           THE COURT:  Are you sure.  Don't be shy about

17   asking questions if you don't understand something.

18           THE DEFENDANT:  Yes.

19           THE COURT:  So you don't have any questions up to

20   now.

21           THE DEFENDANT:  The only question that I have is

22   where I am now when the officer took talking to me I don't

23   understand what they say.  And I have Rick card dough Theard

24   who speak English and if we can get all three of us we can get

25   in the same place it will be better for.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

       Government,                    CR No.

                                  Washington, DC
     vs.                         Date
                                  Time
XXX,

       Defendant.
_____

TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:         ESQUIRE


                            Washington, DC  20530

                            (202)

For the Defendant:         , ESQUIRE


Court Reporter:             Lisa M. Foradori, RPR, FCRR
                          Official Court Reporter
                          U.S. Courthouse, Room 6706
                          333 Constitution Avenue, NW
                          Washington, DC  20001
                          (202) 354-3269

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

DRAFT  -  UNEDITED TRANSCRIPT

1                    P R O C E E D I N G S

2            THE COURT:  Good morning, everybody.  Did everybody

3    get the victim impact statement.

4            MR. MILES:  Yes.

5            THE COURT:  Okay.

6            THE COURT:  Good morning Mr. Destine.

7            COURTROOM DEPUTY:  Criminal case 08-126-01 the

8    United States of America versus Lucson Destine.  Ms. Schmidt

9    for the Government, Mr. Miles for the defendant, defendant is

10   present in the courtroom.

11           THE COURT:  All right.  If we could swear in the

12   interpreter.

13           (Interpreter sworn by clerk).

14           COURTROOM DEPUTY:  State your name for the record.

15           INTERPRETER:  Evan Faustin.

16           THE COURT:  We're here for the sentencing of Mr.

17   Destine.  He entered a plea to Count 2, hostage taking in an

18   aiding and abetting capacity.  The statutory penalties are

19   life imprisonment and a fine of $250,000.  This was a Rule

20   11(c)(1)(C).  The agreement between the Government and the

21   defense was for a sentence of 168 months or 14 years.  And

22   that there would be no fine.

23           What I have is a presentence report.  The

24   Government's memorandum in aid of sentencing and a

25   justification for the Rule 11(c)(1)(C), and a victim impact

1    statement from the victim's father.  There are no objections

2    that have not been resolved.  The advisory sentencing

3    guidelines, the offense level is base offense 32, because

4    there was a ransom demand there was an additional six points.

5    Because a firearm was used, a dangerous weapon, there is an

6    additional two points.  There's a reduction for acceptance of

7    responsibility, which puts the offense level at 37.  Criminal

8    history points zero, so he's in criminal history category one.

9            I would note that this is the calculation that was

10   agreed to in the plea letter itself.  Fact finding is required

11   for the offense level and criminal history scoring and

12   advisory sentencing guidelines.  Since the presentence report

13   is undisputed, I'm accepting all portions of the this

14   undisputed presentence report as findings of fact under

15   Federal Rule of Criminal Procedure 32i3(A).

16           The advisory sentencing guideline range under that

17   calculation is 210 to 262 months.  Probation, would not be

18   eligible.  Supervised release would be three to five years.

19   The fine would be $20,000 to $200,000.  Restitution does not

20   apply.  The special assessment is $100.  So, the difference

21   between the advisory sentencing guidelines, which would be 210

22   months to 262, which is 17.5 years to 21.8 years.  The plea

23   has 168 months, which is 14 years, which is less than the

24   advisory sentencing guidelines.

25           The Government has justified the Rule 11(c)(1)(C)

sentence, that is below the advisory sentencing guidelines, I

guess by 3 years and 5 months on the following grounds:

Mr. Destine was held in a Haitian jail for 17 months related

to this charge under very harsh hash and deplorable conditions

which are described.  He would be eligible for a Smith

departure of six months because he is a deportable alien.

There would always be the dificulty in trying a

complex case involving co-defendants and their statements that

all these events occurred overseas, although the victim was a

United States citizen.  Without minimizing the seriousness of

the crime, the defendant is destitute -- was destitute and

desperate at the time he committed the crime and grew up

without the necessities of life and has no education.  This

will give him sufficient time to provide him with an education

and/or training to be able to lead a better life in Haiti when

he returns there.

The Court accepts and adopts the Government's

justification for the Rule 11(c)(1)(C) sentence and has

considered in addition the advisory sentencing guidelines, the

pleadings and record in this case, the following information,

which I'll go over, in determiniong that the 168 months is a

fair, appropriate and reasonable sentence in conformance with

the factors in 18 U.S.C. 3553(a).

I don't know whether the Government at this point

wishes to make any additional statements, defense counsel or

you've had a very difficult life with very few necessities of
life that have been provided.  And it would appear certainly
that life is considered fairly cheap where you grew up.  This
however is not an excuse for engaging in violent crimes.  You
do need education and vocational training, and this will
certainly give you an opportunity.  Being in prison is
obviously not a pleasant experience, but it will be more
pleasant in the Bureau of Prisons than it was in the Haitian
jail.

          You needed education, vocational training, and it's
my hope that you will take advantage of that.  You have
received and you'll continue to receive medical care and other
rehabilitation services in the Bureau of Prisons, and you
should take advantage of them.  It's my hope that when you
return to Haiti, because you will at some point, you certainly
will still be young man.

          Hopefully you'll be able to live at that point a
productive and law abiding life, and I would hope that you
would give thought during this period as to what you did, how
you came to be there.  You obviously have some determination
on your own since you left an abusive home, were able to find
a place to live, made some efforts to support yourself, you
were not successful, but you obviously have some determination
there and I would hope that you would turn that to something
more productive because I think that you can do that.  Also I

1    D.C within 30 days of any change of address, you'll notify the

2    clerk of the court of the change until such time as the

3    financial obligation is paid in full.  The Court waives any

4    interest or penalties that may accrue on unpaid balances.

5    You'll make payments on the special assessment through

6    participation of the Bureau of Prisons inmate financial

7    responsibility program, if they will allow you to get involved

8    with it.  It's a work program and you earn money.

9                 Within 72 hours of release from custody you'll

10   record in person to the probation office in the district to

11   which you're released.  While on supervision you shall not

12   possess a firearm or other dangerous weapon, shall not use or

13   possess an illegal controlled substance, shall not commit

14   another federal, state or local crime.  Also abide by the

15   general conditions of supervision adopted by the U.S.

16   probation office as well as the following special conditions.

17                 There is a DNA requirement by statute for all

18   felonies offenses, so you'll submit to the collection and use

19   of DNA identification information while incarcerated in the

20   Bureau of Prisons or at the direction of the U.S. Probation

21   Office.  Deportation compliance.  You'll comply with the

22   Bureau of Immigration and Customs Enforcement immigration

23   process.  If deported, you shall not re-enter the United

24   States without legal authorization during the period of

25   supervision.  Should you receive permission to return to the

1   United States, you shall report to the U.S. Probation Office

2   in the area where you intend to reside within 72 hours of your

3   return.

4           The probation office shall release the presentence

5   report investigation report to all appropriate to execute the

6   sentence of the court.  Treatment agencies shall return the

7   presentence report to the probation office on the defendant's

8   completion or termination from treatment.

9           You have a right to appeal the sentence imposed by

10  the Court.  You must file an appeal within 10 days after the

11  court enters judgment.  If you're unable to afford the costs

12  of an appeal, you can ask the Court to appoint counsel to

13  represent you at no cost to you.

14          And, again, I'm recommending placement in the

15  Bureau of Prisons where Haitian/Creole is spoken, as

16  Mr. Destine doesn't speak English and cannot read or write in

17  English or Haitian/Creole.  Now we are done.

18          Parties are excused.

19          MS. SCHMIDT:  We move to dismiss Count 1.

20          THE COURT:  Count 1 is dismissed because he entered

21  the plea to Count 2.

22  END OF PROCEEDINGS AT 10:33 A.M.

23

24

25